(49 App. Div. 286.)

## POWELL v. F. C. LYNDE CO.

(Supreme Court, Appellate Division, First Department.   March 9, 1900.)

1. LANDLORD AND TENANT—AGENTS—MISREPRESENTATIONS.

In an action for rent, allegations that plaintiff's agent, in procuring a lease from defendant at a rental of $12,000 per year, stated that the prior lessee had paid that rental, when in fact he had only paid $10,000 per year, and that defendant was the owner of the prior lease, by assignment, but had not come into possession of it, and was unacquainted with its terms, constitute a defense, as the false statement of the agent was as to a material fact, on which the lessee had the right to rely.

2. SAME—ANSWER—COUNTERCLAIM.

Defendant, in his answer, asked that the new lease be canceled, and the prior lease restored, but did not give up possession. *Held*, that the answer of defendant was a counterclaim for equitable relief, under Code Civ. Proc. § 501, subd. 1, providing that a matter connected with the subject of the action was proper subject of counterclaim.

3. SAME—SURRENDER OF PREMISES.

Defendant was entitled to a rescission of the lease without surrender of the premises.

Appeal from trial term, New York county.

Action by Alexander M. Powell against the F. C. Lynde Company to recover rental under a lease. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial (60 N. Y. Supp. 1044), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

G. D. B. Hasbrouck, for appellant.
Herman Schmitz, for respondent.

McLAUGHLIN, J.  On the 25th of March, 1899, the plaintiff, by an instrument in writing bearing date on that day, leased to the defendant for the term of 10 years and 1 month, commencing on the 1st of April, 1899, certain premises in the city of New York, at an annual rental of $12,000, payable quarterly, except the rent for the month of April, 1899, which was payable on the last day of that month.  The defendant occupied the premises during the month of April, 1899, but neglected and refused to pay the rent stipulated to be paid in the lease, and this action was brought to recover the same.  The answer of the defendant alleged that the plaintiff's agent, who procured the defendant to execute the lease, falsely and fraudulently represented to the defendant that immediately prior to the execution of the lease the property covered by it had rented for $12,000 per year, and that in truth and fact said prior lease was at the rate of $10,000 per year; that the defendant relied upon said representations, believing the same to be true, and by reason thereof was induced to execute the lease referred to in the complaint; that "upon the discovery of the fraud * * * that had been practiced by the plaintiff, his agent and broker, upon this defendant, this defendant gave notice in writing to the plaintiff that it repudiated the said lease so procured and executed as aforesaid."  The answer also alleged that, prior to the execution of the lease, the

property had been rented to R. J. Dean & Co., which lease "had several years to run, at the rate of ten thousand (10,000) dollars per year"; that the defendant, though the owner of the R. J. Dean & Co. lease at the time of the execution of the lease in suit, had not then come into possession of it, and was unacquainted with its terms, and it was, by reason of the fraud practiced upon it, induced to execute the lease in suit, and sign a cancellation of the R. J. Dean & Co. lease. The judgment prayed for was that the lease mentioned in the complaint be canceled, and that the R. J. Dean & Co. lease be restored. The plaintiff replied to the new matter set up in the defendant's answer, denied that the person who procured the execution of the lease referred to in the complaint was his agent, and put in issue all of the other material allegations of the defendant's answer. At the trial the lease referred to in the complaint was introduced in evidence. It was executed March 25, 1899, and there was indorsed upon it a cancellation of the R. J. Dean & Co. lease, under the same date. After the plaintiff had testified that the April rent had not been paid, a motion was made for the direction of a verdict upon the ground that the facts stated in the defendant's answer did not constitute a defense to the action. The motion was granted, and the defendant has appealed.

In considering the question presented on this appeal we must assume that the facts alleged in defendant's answer could have been established upon the trial, viz. that a false representation was made to the defendant to induce it to execute the lease referred to in the complaint; that such false statement was made by the plaintiff's agent; that the defendant was the owner of the R. J. Dean & Co. lease, which then had several years to run, but was unacquainted with the terms of it; that the defendant relied upon and was misled by the statement made by the plaintiff's agent, and that the defendant duly and properly notified the plaintiff that it "repudiated the said lease" procured by this fraud. Some of these questions are discussed by plaintiff's counsel in the brief filed, but it is unnecessary to consider them, for the reason, as I have already indicated, that we must assume the defendant could have established them at the trial. They were alleged in the defendant's answer, and it was prevented from offering any proof to establish such allegations. That the misrepresentation as to what the property had rented for immediately prior to the execution of the lease in suit was a material one of fact cannot, we think, be seriously questioned. In Fairchild v. McMahon, 139 N. Y. 290, 34 N. E. 779, it was held that a false statement, deliberately made, by a party when about to sell property to the party proposing to purchase, as to the price shortly before paid to a former owner, which was intended to and did influence the purchaser, is a sufficient basis upon which to predicate a finding of fraud. A false statement as to the former rental of property made to an intending lessee is strictly analogous to a misstatement as to a former price made to an intending purchaser. The agent of the plaintiff did not merely give his opinion as to the rental value of the property. On the contrary, he asserted as a fact that the property had rented immediately prior thereto for $12,000 a year.

This fact was intended to, and did unquestionably, influence the action of the defendant. This is evidenced by the fact that it actually paid rent during the time it occupied in March, under the R. J. Dean & Co. lease, at the rate of $12,000 per year, when that lease, as we have already seen, was at the rate of $10,000 per year. The case of Rosenbaum v. Gunther, 3 E. D. Smith, 204, cited by the defendant's counsel, is not in point. In that case an undertenant agreed to pay $500 for a portion of the premises, it being represented to him that his lessor paid $1,000 for the whole, when, in fact, he paid but $700. It was said: "Whether the plaintiff was bound to pay $700 or $1,000 was immaterial to the defendant, who agreed to give for his portion of the premises $500." The controlling feature of that case seems to have been the fact that the whole of the premises was not sufficiently related to the particular part which the defendant leased to constitute a fraudulent statement. Here we have the fact that the broker said $12,000 had been received for the premises. The representation was false, and necessarily misleading. It is true, in the Rosenbaum Case it was said that "representations as to the value, where the party has an opportunity of examining, are never considered sufficient to avoid a contract." If by this the court intended to hold that a representation of that character was merely the expression of an opinion, then it must be held that the case is contrary to Fairchild v. McMahon, supra, and to that extent, and in that respect, overruled by it. But the case before us is distinguished from the Rosenbaum Case not only in the particular specified, but also because the defendant was, at the time the statement was made, the actual owner and holder of the old lease, which had several years to run; and was thus peculiarly interested in knowing the terms of it. Notwithstanding the fact that the defendant was the owner of the old lease, it had a right to rely upon the representation—being itself ignorant on the subject—made by the plaintiff's agent as to the former rental of the property. Mead v. Bunn, 32 N. Y. 275; Simar v. Canaday, 53 N. Y. 298; Sandford v. Handy, 23 Wend. 260. In the case last cited, it was said that "the vendor is not bound to speak on the subject, but, if he does, he should speak the truth." The learned trial judge held, basing his ruling upon the authorities of Grosvenor v. Green, 28 Law J. Ch. 173, and Wilson v. Hart, 1 Ch. App. 463, that the defendant was bound, in law, to know the contents of the R. J. Dean & Co. lease, which it owned. A careful consideration of the Grosvenor Case, however, will show that the statement is there distinctly made that, if the landlord takes it upon himself to make any statement as to the contents of the lease, the lessor is entitled to rely upon it.

This brings us to the consideration of the remaining question, and that is whether there is a sufficient allegation in the defendant's answer for a rescission. We think there is. The answer is, in effect, a counterclaim for equitable relief,—the cancellation of the new lease and the restoration of the R. J. Dean & Co. lease. It is true that the relief thus sought to be obtained is nowhere designated in the answer as a counterclaim, but the allegations of the answer are sufficient for that purpose. The demand for judgment is for a

rescission of the new lease and the restoration of the old one. The plaintiff replied to it as a counterclaim, and we think it should be treated as such. It is connected with the subject of the action, and therefore a proper subject of counterclaim. Code Civ. Proc. § 501, subd. 1. The plaintiff predicated its right to recover upon the new lease. The defendant denied that right by asserting the invalidity of the lease. The issue thus raised, therefore, should have been treated precisely as though the defendant had brought an independent action in equity to cancel the new lease and to restore the old one. If we are right as to the effect of the answer, then it necessarily follows that the allegations contained in it were sufficient for a rescission, because the judgment rendered could do justice between the parties. Allerton v. Allerton, 50 N. Y. 670; Harris v. Society, 64 N. Y. 196; Gould v. Bank, 86 N. Y. 76; Bank v. Peters, 123 N. Y. 279, 25 N. E. 319; Kley v. Healy, 127 N. Y. 555, 28 N. E. 593; Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L. Ed. 486.

In Allerton v. Allerton, supra, the plaintiffs alleged that they were induced to part with their interest in a firm, to the defendant, through fraud, and the court there held that it was not necessary for them to return the moneys received, in view of the fact that it appeared that the defendant had already received a sum equal thereto, out of the property transferred, and that provision could be made in the judgment by which this sum could be credited to the defendant, and he required to account for the balance. It was further held that the rule "that he who seeks to rescind an agreement upon the ground of fraud must place the other party in as good a situation as that in which he was when the agreement was made" is satisfied if the judgment asked for will accomplish that result, and in such case no offer to return that which was received is necessary.

In Harris v. Society, supra, the Allerton Case was referred to, Judge Miller saying:

"It was also remarked that the reason of the rule is that the party shall not retain the thing which is the subject of the contract, and on his action recover the price paid for it, or retain the price paid, and on his action recover the thing, and that this reason is satisfied when the claim made and the judgment sought by the plaintiff will leave with the defendant all that he parted with, and thus put him in as good plight as at the time of the agreement."

In Gould v. Bank, supra, Judge Earl, also referring to the Allerton Case, said:

"But the defrauded party need not rescind, and sue in an action at law for the consideration parted with upon the fraudulent contract. He may bring an action in equity to rescind the contract, and in that action may have full relief. Such an action does not proceed upon a rescission, but proceeds for a rescission. In such an action it is sufficient for the plaintiff to offer, in his complaint, to restore to the defendant what he has received, and the rights of the parties can be fully regulated and protected in the judgment to be entered. Such was the case of Allerton v. Allerton, 50 N. Y. 670."

In Kley v. Healy, supra, the action was brought to set aside the satisfaction of a judgment procured by fraud. In addition to the fraudulent representations, the defendant promised to pay the plain-

tiff's counsel fees and judgment, and in fact did pay the former. It was held that it was not necessary, in order to enable the plaintiff to maintain the action, to return the sum paid, but that it could be provided for in the judgment. And in Thackrah v. Haas, supra, a person, while intoxicated, was induced, for an inadequate consideration, to transfer valuable property. He was poor, and unable to pay back the money received. It was held that this was unnecessary; that the property should be directed to be sold, and the defendant paid out of the proceeds the sum which he paid, and the balance restored to the plaintiff.

Applying the principle laid down in the foregoing authorities, and many others which might be cited to the same effect, it seems to us clear that the defendant did not omit to do anything which was necessary to protect its rights, or to procure a cancellation of the new lease and restoration of the R. J. Dean & Co. lease. As has already been indicated, the action was, in effect, an equitable one, and it should have been treated just as though the defendant had brought an equitable suit for the cancellation of the new lease and the restoration of the old one. It did not surrender the possession of the premises covered by the new lease to the plaintiff, and it was not bound to. It was entitled to the possession of the premises, in any event,—if the new lease failed, then under the old lease; and, as was stated in Kley v. Healy, supra: "One who attempts to rescind a transaction on the ground of fraud is not required to restore that which, in any event, he would be entitled to retain, either by virtue of the contract sought to be set aside or the original liability." The learned trial justice was of the opinion, and he put his decision upon that ground, that the defendant was bound to surrender the new lease to the plaintiff, with a proper consent to its cancellation indorsed upon it. We do not think so. The defendant could produce the new lease at the trial, and offer to give it up for cancellation; if, indeed, that were necessary. The judgment would provide for the cancellation. It would be a conclusive adjudication either that the old lease remains in force or that it has been canceled, and the new one is valid. Even in an action at law, where a party seeks to avoid a credit upon the ground of fraud, it is not necessary to tender back promissory notes, if such have been given. It is sufficient to have them at the trial, ready to be there surrendered and canceled. This, too, when it is shown that at the time of the attempted rescission the notes have been negotiated, and are not in the possession or under the control of the party seeking to rescind. The surrender, or, rather, the consent to surrender, the new lease, is not a condition precedent to the right to commence an equitable action for its cancellation; much less is it a condition precedent to the right to interpose the answer which the defendant did, and have the issue thus raised tried and determined.

It follows from what has been said that the defendant was deprived of its right to try the defense set up in its answer, and for this reason we think the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur; INGRAHAM, J., in result.