The New York Central Railroad Company, Plaintiff, *v.* The Federal Sugar Refining Company, Defendant.

First Department, June 2, 1922.

Carriers — action against consignor to recover freight charges — goods consigned to consignor on order-notify bill of lading which was not marked that freight charges were " to be prepaid " — goods waybilled through negligence of agent of carrier as prepaid and delivered to notify-party without payment of charges — subsequent insolvency of notify-party — consignor not liable to carrier for freight charges — if carrier could recover, consignor would have right to counterclaim for like amount.

While under a straight bill of lading a consignor is primarily liable for freight charges, it cannot be held liable for freight charges on goods shipped by it and consigned to itself on an order-notify bill of lading carrying the published rate which was not stamped " To be prepaid," where the agent of the carrier negligently waybilled the goods as having been prepaid and the goods were delivered to the notify-party on surrender of the bill of lading properly indorsed by the consignor without requiring the notify-party to pay the charges, and it appears that at the time the goods were so delivered the notify-party was solvent and able to pay the charges, but at the time the action was brought and before the consignor was notified that the charges had not been paid the notify-party had become insolvent.

*It seems,* that even though the carrier could recover, nevertheless the consignor would have a right to counterclaim a like amount for the damages resulting from the negligence of the agent of the carrier in delivering the goods to the notify-party without demanding the charges.

Submission of a controversy upon an agreed statement of facts, pursuant to section 546 of the Civil Practice Act.

**468** New York Central R. R. Co. *v.* Federal Sugar R. Co.

First Department, June, 1922.                    [Vol. 201

*Alex. S. Lyman* [*William Mann* of counsel], for the plaintiff.

*Ernest A. Bigelow* of counsel, for the defendant.

Merrell, J.:

The controversy between the parties involves two alleged causes of action in favor of the plaintiff and against the defendant. In the agreed statement of facts, signed by the respective parties, for a first cause of action, it is stipulated as follows:

" 1. That at all the times hereinafter mentioned plaintiff was and now is a domestic steam railroad corporation and maintains an office for the transaction of business in the Borough of Manhattan, City, County and State of New York.

" 2. That pursuant to the provisions of Section 1 of the Act of Congress, approved August 29, 1916, the President of the United States as set forth in his proclamation of December 26, 1917, by and through the Director-General of Railroads, therein designated, took and assumed the control, possession and operation of certain Railroads and systems of transportation, including that of the plaintiff, from and after December 28, 1917, and by virtue thereof and of the Act of Congress, approved March 21, 1918, the railroad transportation system of the plaintiff continued to be, and until February 29, 1920, was in the control, possession, use and operation of the United States Government.*

" 3. That by reason of the premises, and in accordance with the provisions of the said Acts of Congress, this cause of action is instituted in the name of the plaintiff for the use and benefit of the Director-General of Railroads.

" 4. The defendant is a domestic corporation and maintains an office for the transaction of business in the City of Yonkers, County of Westchester, and State of New York.

" 5. On or about the 7th day of March, 1918, the defendant herein delivered to the Director-General of Railroads, at Yonkers, N. Y., a shipment of 170 barrels of sugar for transportation and delivery to the order of the Federal Sugar Refining Company, notify Lewiston Confectionery Company, at Lewiston, Maine; that the Director-General of Railroads received and accepted the said shipment and issued to defendant a bill of lading therefor, a copy of which is hereto annexed and marked ' Exhibit A,' and

---

* See Army Appropriations Act of 1916 (39 U. S. Stat. at Large, 645), § 1; Federal Control Act (40 id. 455, 456), §§ 8, 9; Pres. Proc. Dec. 26, 1917, Mar. 29, 1918, Apr. 11, 1918, Jan. 10, 1919, 40 id. 1733, 1763, 1769, 1922; Transportation Act of 1920, being 41 id. 456, chap. 91; Transportation Act of 1920 (41 id. 461), § 206; Transportation Act of 1920 (41 id. 469), § 211; Pres. Proc. Feb. 28, 1920, Mar. 11, 1920, May 14, 1920, Mar. 26, 1921, 41 id. 1788, 1789, 1793. 1794, and 42 id. ——. — [Rep.

caused it to be transported to its destination, and there notified the Lewiston Confectionery Company of the arrival of said shipment, and the said Lewiston Confectionery Company accepted delivery of the said shipment, and surrendered said bill of lading.

" 6. The agent of the Director-General of Railroads at Yonkers, New York, erroneously waybilled said shipment as a prepaid one and as a result thereof transportation charges were not collected from said Lewiston Confectionery Company at the time of delivery of said property; the billing was thereafter corrected and payment of said charges demanded from said company, but the plaintiff is unable to collect the same for the reason that said Lewiston Confectionery Company is wholly insolvent and its business has been discontinued; at the time of the delivery of said sugars to said Lewiston Confectionery Company, said company was solvent and in a position to meet its obligations, but between the date of said delivery and the date of plaintiff's attempt to collect its charges from said company, said Lewiston Confectionery Company became wholly insolvent and discontinued its sugar business; on or about April 2, 1920, plaintiff demanded payment of said charges from defendant but the defendant refused and still refuses, to pay same; prior to April 2nd, 1920, defendant had no knowledge, actual or constructive, that said charges had not been collected by plaintiff from said Lewiston Confectionery Company in due course.

" 7. That 30 days prior to said respective dates, or any thereof, the Director-General of Railroads had filed with the Interstate Commerce Commission tariffs and classifications showing the rates, fares and charges for the transportation aforesaid, between the respective points of origin and destination aforesaid, and that computed in accordance with the provisions of the said tariffs and classifications, the charges for the transportation of the said property amounted in the aggregate to the sum of $134.64."

And for a second cause of action the parties stipulated as follows:

" 8. At all the times hereinafter mentioned the plaintiff was and now is a domestic railroad corporation, maintaining an office for the transaction of business in the Borough of Manhattan, City, County and State of New York, and was and is a common carrier of passengers and freight for hire.

" 9. That at all times hereinafter mentioned the defendant was and now is a domestic corporation, maintaining an office for the transaction of business in the Borough of Manhattan, City, County and State of New York.

" 10. On September 1st, 1916, defendant delivered to the plaintiff at Yonkers, N. Y., 30 barrels, 203 bags and 40 bales of sugar

**470** New York Central R. R. Co. *v.* Federal Sugar R. Co.

First Department, June, 1922. [Vol. 201

for transportation to Wilkes Barre, Pa., consigned to the order of the defendant, notify Maplewood Company, and the plaintiff issued to the defendant a bill of lading for the transportation of said property, a copy of which is hereto annexed and marked ' Exhibit B.' The plaintiff transported said property to destination and delivered same to the Maplewood Company upon surrender by it of said bill of lading.

" 11. Through an error on the part of the agent of the plaintiff at Yonkers, New York, said shipment was waybilled as a prepaid one and, as a result thereof, transportation charges were not collected from said Maplewood Company at the time of delivery of said property; the billing was thereafter corrected and payment of said charges demanded from said company but the plaintiff is unable to collect the same from said Maplewood Company because it is wholly insolvent. At the time of the delivery of said sugar to said Maplewood Company, said company was solvent and in a position to meet these obligations, but between the date of said delivery and the date of plaintiff's attempt to collect its charges from said Maplewood Company, said company became wholly insolvent. On or about March 19th, 1920, the plaintiff demanded payment of said charges from defendant but the defendant refused and still refuses to pay the same. Prior to March 19th, 1920, defendant had no knowledge, actual or constructive, that said charges had not been collected by plaintiff from said Maplewood Company in due course.

" 12. That thirty days prior to September 1st, 1916, the plaintiff had filed with the Interstate Commerce Commission its tariffs and classifications showing rates, fares and charges for the transportation of said property between Yonkers, N. Y., and Wilkes Barre, Pa., and that computed in accordance with the provisions of said tariffs and classifications the charges for the transportation of said property amounted in the aggregate to $53.02.

" 13. The plaintiff claims that it is entitled to judgment on the first cause of action for $134.68, with interest thereon from March 18, 1918, and judgment on the second cause of action for $53.02, with interest thereon from March 1st, 1916.

" Defendant claims that the plaintiff's claims should be dismissed, or, if plaintiff's claims be allowed, then that defendant should have judgment against plaintiff in the same amount, as damages for plaintiff's negligence.

" 14. The parties agree that the Court shall render such judgment as shall be proper on the above facts."

Summarized, the parties stipulated in the agreed statement of facts that the sugar embraced in the first cause of action was

delivered by the defendant to the plaintiff on March 7, 1918, under what is known as an order-notify bill of lading with freight charges to be collected. The sugar referred to in the first cause of action, consigned by the defendant to itself at Lewiston, Me., was upon delivery of the notify-bill of lading, delivered by the plaintiff to the Lewiston Confectionery Company without requiring said company to pay the freight charges thereon. The confectionery company had become the holder of said bill of lading and presented the same to the railroad company and received the sugar, notwithstanding the fact that upon the bill of lading there was a statement that, if transportation charges were to be prepaid, there should be written or stamped thereon the words "To be prepaid," and, notwithstanding the fact that said words were neither stamped nor written upon the bill of lading, the plaintiff delivered said sugar to the confectionery company without requiring the payment of the freight charges thereon. It was not until over two years later that the defendant was informed that the freight charges were not, in fact, collected of the Lewiston Confectionery Company by the plaintiff. At the time of the delivery of the sugar to the notify-party, namely, the Lewiston Confectionery Company, said company was solvent, and plaintiff's freight charges for the transportation of said sugar could then have been collected, but, in the meantime, and before the defendant was informed of the fact that the plaintiff had delivered said sugar without collecting the freight charges thereon, the confectionery company became insolvent and went out of business.

The same condition prevailed as to the second cause of action. There the sugar was shipped September 1, 1916, under a like order-notify bill of lading with freight charges to be collected, and it was not until March 19, 1920, that the defendant learned that the freight charges thereon had not been collected from the Maplewood Company, at Wilkes Barre, Penn., the notify-party to whom said bill of lading had been indorsed. As in the case of the Lewiston Confectionery Company, the Maplewood Company was solvent at the time of the delivery to it of said sugar, and the freight charges for transportation thereof could have been then collected from it. When the defendant was first informed that the plaintiff had not collected said freight of the Maplewood Company, said company had become wholly insolvent.

It is the contention of the plaintiff that it could collect its freight charges from either the consignor or the consignee, which, in this instance, is the same party, namely, The Federal Sugar Refining Company. The defendant, on the other hand, contends that these sugars, having been sold under order-notify bills of lading,

the plaintiff should not have relinquished possession of the goods to the notify-party in either case until the freight charges for transportation thereof were paid.

The office of order-notify bills of lading, as used in these two transactions, is quite evident. It is provided upon the face of such a bill of lading that the surrender of the original, properly indorsed, shall be required before delivery of the property covered thereby. Under such a bill of lading the buyer cannot obtain possession of the property until the seller has received payment and by indorsement has transferred the title thereto to the buyer. Upon the face of such bill of lading there also appears the provision above mentioned, that, if charges are to be prepaid, there must be stamped or written upon the face of the bill the words, " To be prepaid." In other words, that if the freight charges are to be paid by the shipper, the indorsement thereon must so indicate. Unless the bill is stamped, " To be prepaid," then, of course, the freight charges are to be collected from the buyer before the goods are turned over to him. In this case the buyer is the notify-party. In neither of the two instances involved in this controversy was the bill of lading so stamped. This was an indication that the freight charges were not included in the price which the defendant was to receive from its customer, but were to be collected by the plaintiff, the carrier, before the goods were turned over to the purchaser. Owing to the fact that the plaintiff's shipping agent at Yonkers had in each case erroneously waybilled the freight charges on the sugars as prepaid, the plaintiff, disregarding the plain provision of the bill of lading delivered to it to collect the freight charges from the purchaser, turned over the goods to the defendant's customer without collecting such charges. The effect of such action on the part of the railroad company was to defeat the very purpose for which the defendant shipped the sugars under the form of bill of lading used. The plaintiff should have demanded of the notify-party in each case the payment of said freight charges before turning over the merchandise to said parties, respectively. Unquestionably the defendant believed that the plaintiff would follow instructions and collect the freight charges from the purchaser of the goods. The purchase price of the sugars was collected by the defendant before delivery of the bill of lading. We think it had an entire right to rely upon the carrier to collect the freight of the purchaser before delivering the goods. The failure to collect such charges was due solely to the carrier's negligence. At the time of the delivery of the sugar in each case, the customer was solvent, and said freight charges would have been paid by it upon demand. If payment of the charges was refused, the railroad

company would have had a lien upon the sugar therefor. Owing to the insolvency of the buyers, the defendant is now powerless to recover the freight or to reimburse itself from the buyers for such charges. If the plaintiff should now be permitted to collect of the defendant said freight charges, the defendant would lose a part of the sales price of its sugars through no fault of its own, but solely by reason of the negligence of the plaintiff.

Ordinarily the consignor would be primarily liable for these freight charges. The contract of shipment was made between the defendant and the plaintiff. Nevertheless, we think, under the form of order-notify bill of lading under which these sugars were shipped, the carrier should not be permitted to recover of the shipper the freight charges for transporting said merchandise, when, through its own acts of negligence it has prejudiced the shipper from requiring payment thereof by the purchaser. While, under authorities upon which the plaintiff relies, the carrier cannot bind itself to collect freight charges only from the consignee, it does not necessarily follow that, under the form of order-notify bill of lading used in these shipments, the carrier may not bind itself to deliver the goods *only* to the consignee, *unless* the notify-party or purchaser of the bill of lading pays such freight charges. It must be borne in mind that in this case the shipper, or consignor, is also the consignee, and that, under the peculiar form of the order-notify bill of lading used in these cases, the consignment of the merchandise was to the defendant, and the carrier was only authorized to deliver the sugars upon surrender of the original order bill of lading, properly indorsed and in conformity with its plain provisions as to the payment of the freight charges.

Many authorities are cited by the plaintiff in support of its contention that the consignor of freight shipped in interstate commerce is primarily liable for the freight charges and is not relieved of that liability because of the failure of the carrier to collect such charges of the consignee or person to whom the property is delivered. So far as we have been able to ascertain, none of the authorities cited by the plaintiff arose upon an order-notify bill of lading such as that under which the shipments in suit were made. Unquestionably, under a straight bill of lading and under the provisions of the Interstate Commerce Act (24 U. S. Stat. at Large, 379, chap. 104, as amd.) as applied by the Federal courts, the consignor would be primarily liable for the freight charges, and the courts have held that under said Interstate Commerce Act a carrier would not be estopped from collecting the freight charges from the shipper, although it had agreed to collect the same from the consignees *and from no other person.* The Inter-

state Commerce Act was enacted for the purpose of preventing unjust discrimination by common carriers in favor of certain shippers; but the shipments in the case at bar, we think, involve an entirely different proposition. Here the consignor and the consignee are one and the same, while the notify-party was the one to whom the goods were to be delivered by the carrier upon surrender of the bill of lading and payment of the freight rates. We think the contention of the defendant, that, under the peculiar form of the bill of lading under which these goods were transported, the carrier had no right, to the prejudice of the defendant, to surrender possession of the sugars without collecting the freight rates from the notify-parties, is sound. In the case of *Wells-Fargo & Co.* v. *Cuneo* (241 Fed. Rep. 727), District Judge Mayer very properly held that it was the duty of the carrier to collect the charges, " and, if the consignee will not pay, plaintiff is not called upon to sue the consignee, but may look to the shipper." Undoubtedly the rule stated by Judge Mayer is correct, but there is no inconsistency with such rule in holding that, where the carrier has issued an order-notify bill of lading in which the shipper is named as the consignee, such goods shall not be delivered to a third party, namely, the notify-party, in violation of the carrier's duty to the shipper to hold the goods until the freight charges were paid. We do not think the authorities cited by the plaintiff reach this point. Plaintiff's authorities support the sound principle that a carrier must not, by any device, depart from its published rates. There is no violation of the Interstate Commerce Act nor any departure from published rates in holding the carrier liable for delivering the merchandise of the consignor-consignee to a third party without collecting the freight. The question presented upon this submission is whether or not a carrier may claim the published rates from the shipper when, contrary to the plain provisions of the order-notify bill of lading, such carrier has negligently turned over the goods to the notify-party without exacting payment from it of the published rates.

Many cases are cited by the plaintiff that the consignor is primarily liable for the freight charges, and that the carrier cannot, by any act, estop itself from collecting such charges from the consignor. The decisions are upon the theory that to permit a carrier to make a contract otherwise than to collect the freight charges from the consignor would be to remove every statutory obstacle to discrimination or rebating which the Interstate Commerce Act seeks to prevent. The Interstate Commerce Act forbids discrimination against a shipper, and if a carrier is to be permitted to lull a shipper into believing that it has collected the freight

charges, pursuant to the plain terms of the contract of sale and of the order-notify bill of lading under which the shipment was made, and then, years after, recover from the shipper the freight charges, thus depriving the shipper of a part of the agreed sales price, surely a most unjust discrimination against the shipper would result. In the shipments involved in this submission, the goods were sold upon contract that the purchaser would pay the freight charges. The goods were shipped under an order-notify bill of lading, under the terms of which the carrier had no right to part with possession of the goods, except upon payment of such charges. Over two years later, and after its customers had become insolvent and the charges uncollectible from them, the shipper learned, for the first time, that the carrier had delivered the goods contrary to the terms of the order-notify bill of lading and without exacting the payment of the freight rates thereof. We think that to permit the carrier, at so late a date, to collect such freight from the shipper, would violate the spirit of the Interstate Commerce Act and allow an unjust discrimination against the shipper. Such a course would afford carriers an easy way to discriminate by exacting the payment of freight from notify-parties under order-notify bills of lading of favored shippers, while unfavored shippers might be called upon, months after they had settled with their customers, for the payment of freight rates which the customer had agreed to pay.

We do not think the Interstate Commerce Act, as amended, is involved in this controversy, but the real question to be determined is whether a carrier may collect freight charges where it has, negligently and contrary to the plain provisions of the bill of lading under which the goods were shipped, turned the same over to a purchaser without requiring the payment of the freight. (*Yazoo & M. V. R. Co.* v. *Zemurray*, 238 Fed. Rep. 789.)

The cases cited by the plaintiff in support of the principle that the mistake of an agent in quoting a wrong rate does not relieve a shipper from paying the published rates, have, we think, no application to the question presented in the case at bar. Here the issue is not a departure from a published rate, but whether a carrier may disregard the provisions of an order-notify bill of lading carrying the published rate and lawfully issued under authority of the Interstate Commerce Commission.

Even though the plaintiff might be right in its contention that, even under the circumstances and notwithstanding its negligent acts and violation of its contract, the carrier may have a cause of action against the shipper to recover the freight, nevertheless we think that the shipper may counterclaim a like amount as the

damages which it suffered by reason of the surrender by the carrier of possession of its merchandise to the order-notify parties without requiring the payment of the freight charges thereon. If the plaintiff is to be permitted to collect of the defendant the freight charges for transporting said merchandise to the purchasers, then, to that extent, through plaintiff's negligence and unauthorized act in delivering the sugars to the purchasers without requiring payment of the freight charges thereon, the defendant is to be deprived of the sales price for its merchandise. Under such circumstances we think the defendant should be permitted to counterclaim therefor against the plaintiff's cause of action. (*Wells-Fargo & Co.* v. *Cuneo*, 241 Fed. Rep. 727; *Payne* v. *Clarke*, 271 id. 525; *Chicago & N. W. Ry. Co.* v. *Tecktonius Mfg. Co.*, 262 id. 715.) In *Wells-Fargo & Co.* v. *Cuneo* (*supra*) Judge Mayer said (at p. 729):

" The demurrer to the counterclaim is interposed on the ground that, in an action by an interstate carrier to recover its charges, a defendant cannot counterclaim for damages to the shipment, because the Interstate Commerce Act requires the carrier to collect its lawful charges and to accept only money in payment   *   *   *.

" The provisions of the act in question were never intended to deprive a shipper or consignee of his lawful remedies against the carrier for such breaches or wrongful acts as the carrier may have committed. The policy of the law is to settle germane disputes in one litigation, and this counterclaim fully accords with the New York practice in that regard. When the carrier has found a defendant in one jurisdiction and has brought its action there, it would be most unjust to force such a defendant to go to another jurisdiction to assert his rights and claims in an independent action; and if, on the other hand, both parties are in the same jurisdiction, it would be the height of absurdity to require two actions to be brought where the controversy could be disposed of in one. Obviously, if the parties intended to evade the statute by an unlawful compromise, they could do it as easily by the medium of two law suits as they could in one.

" So that really what the contention comes down to is that the shipper would be deprived of his rights; for, if the right to counterclaim for damages is denied to him, I cannot appreciate any theory on which he could be permitted to assert precisely the same claim for damages in an independent law-suit. Indeed, such a construction as plaintiff here urges would give to carriers, under some circumstances, an undue advantage, and might readily work an injustice upon shippers and consignees never contemplated by the statute."

It follows, therefore, that the plaintiff's claims should be dismissed, and that the defendant should have judgment against the plaintiff accordingly.

CLARKE, P. J., SMITH, PAGE and GREENBAUM, JJ., concur.

Judgment ordered for defendant. Settle order on notice.