## FRIEDMAN v. KENNEDY.

### No. 208.

Municipal Court of Appeals for the District of Columbia.

Nov. 22, 1944.

---

[9] See also United States v. Capital Traction Co., 34 App.D.C. 592, 19 Ann. Cas. 63.

Leonard Kaplan, of Washington, D. C., for appellant.

Augustus P. Crenshaw, III, of Washington, D. C. (Charles F. Wilson and Francis W. Hill, Jr., both of Washington, D. C., on the brief), for appellee.

Ernest F. Henry, Gen. Counsel, of Washington, D. C. (James A. Crooks, Asst. Gen. Counsel, of Washington, D. C., on the brief), for Robert F. Cogswell, Administrator of Rent Control for the District of Columbia, of Washington, D.C., amicus curiae.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellant is the owner of residential property which he leased in September, 1943, to appellee. The property was not rented on January 1, 1941, nor within the previous year, and under the District of Columbia Emergency Rent Act the maximum rent ceiling for it was the rent "generally prevailing for comparable housing accommodations as determined by the Administrator." Code 1940, § 45—1602(1) (c). At the time of making of the lease to appellee no determination for this property had been made by the Administrator. The lease provided for a term of three years at a rental of $71.50 per month, the last twelve months' rental being payable on execution of the lease and the first twenty-four months' rental payable monthly in advance.

Appellee upon executing the lease paid the last twelve months' rent and the first month's rent; but when the second month's rent was due insisted that the rental paid in advance for the last twelve months should be applied to current rent, and refused further payment. Appellee then also contended that the rent charged was in excess of the prevailing rent for comparable housing. Appellant brought an action for possession for non-payment of rent. Appellee filed a cross-complaint, seeking to rescind the lease, to recover double the excess rent paid—if the Administrator should determine a lower rent—and attorneys' fees.

The court proceedings were held in abeyance, awaiting action by the Rent Administrator. Appellee filed a petition with the Administrator, seeking a reduction of rent and an order requiring that the rent paid in advance be applied to current rent. His petition was dismissed because there was "no established rent ceiling" and "reduction of rent cannot be entertained until the rent is established" and because the relief sought regarding the provision of the lease requiring the last year's rent in advance "is probably the function of the District Court in a suit brought by the tenant to rescind the contract." However, the Administrator proceeded to act on a petition previously filed by appellant asking for a determination of the rent ceiling. The Administrator established a maximum rent ceiling of $67.50 per month.

Thereupon appellee amended his cross-complaint to seek rescission of the lease, judgment for $104 (alleged to be double the excess rent) and attorney's fees.

A hearing in the court action followed, with apparently little dispute as to the facts. The case was taken under advisement and thereafter, at the request of the trial court, the case was reargued. On reargument appellee, conceding that he could not recover damages and also have rescission of the lease, again amended his cross-complaint to seek only rescission' of the lease and attorneys' fees. Again the case was taken under advisement and while so under advisement appellant took a voluntary non-suit of his action for possession, leaving before the court only the matter of appellee's cross-complaint.

The court filed a written memorandum in which it found that appellant had "received rent in violation of the provisions of the Rent Act and of the order of the Administrator of Rent Control fixing a maximum rent ceiling of $67.50," and that the appellee "is entitled to a rescission of the lease and a refund of rent." Judgment was entered for appellee for $322, being the difference between the rent paid in advance and the rent then accrued and due at the rate established by the Administrator, and for rescission of the lease, plus attorneys' fees of $75.

Since appellee made no offer to surrender possession, and the judgment rescinding the lease did not require surrender of possession, the question is presented whether under the Emergency Rent Act a tenant may obtain a rescission of his lease without surrendering possession of the property, which possession he secured under the rescinded lease.

Section 10(a) of the Emergency Rent Act provides:

"If any landlord receives rent or refuses to render services in violation of any provision of this Act, or of any regulation or order thereunder prescribing a rent ceiling or service standard, the tenant paying such rent or entitled to such service, or the Administrator on behalf of such tenant, may bring suit to rescind the lease or rental agreement, or, in case of violation of a maximum-rent ceiling, an action for double the amount by which the rent paid exceeded the applicable rent ceiling and, in case of violation of a minimum-service standard, an action for double the value of the services refused in violation of the applicable minimum-service standard or for $50, whichever is greater in either case, plus reasonable attorneys' fees and costs as determined by the court. * * *"

The Act does not define the word "rescind", and we must accept its meaning to be that ordinarily ascribed to it. Black, in his well known work on Rescission and Cancellation, (1916), sec. 1, says: "To rescind a contract is not merely to terminate it but to abrogate and undo it from the beginning; that is, not merely to release the parties from further obligation to each other in respect to the subject of the contract, but to annul the contract and restore the parties to the relative positions which they would have occupied if no such contract had ever been made." This language has been quoted with approval in many decided cases. E.g. Sylvania Industrial Corporation v. Lilienfeld's Estate, 4 Cir., 132 F.2d 887, 145 A.L.R. 612; National Supply Co. v. Southern Creamery Co., 224 Ala. 507, 140 So. 590; Reed v. McLaws, 56 Ariz. 556, 110 P.2d 222; Wall v. Zynda, 283 Mich. 260, 278 N.W. 66; J. I. Case Threshing Machine Co. v. Street, Tex.Civ.App., 216 S.W. 426. Other authorities have used language to the same effect, saying that to rescind means to annul, to put an end to as though it never existed, to wipe out the instrument. Williston, Contr., sec. 1454 (a); Russell v. Stephens, 191 Wash. 314, 71 P.2d 30; United Wool Dyeing & Finishing Co. v. Werner & Co., 102 N.J.Eq. 322, 140 A. 465.

Had Congress intended to use the word "rescind" in a sense different from its well established meaning, we are convinced

it would have plainly said so.[1] Giving to "rescind" its commonly accepted meaning, it follows that when the tenant under the Rent Act seeks and obtains a rescission of his lease, the instrument is annulled and abrogated. In such a case, under what theory may the tenant claim, and the court allow, the right to remain in possession of the premises? It was by means of the instrument sought to be rescinded that the tenant obtained possession. Can he abrogate his lease but retain the benefits received under it? A well settled principle of the law of rescission is that one may not rescind in part and affirm in part; rescission must be in toto; and one may not rescind an agreement and at the same time retain the consideration received for its execution. Lyons v. Allen, 11 App.D.C. 543; Singer v. Friedman, 66 App.D.C. 191, 85 F.2d 690; Brittle v. Maplecrest Country Club, 208 Wis. 628, 242 N.W. 512. "He cannot treat the contract as rescinded for the purpose of escaping obligations under it, and at the same time treat it as subsisting for the purpose of claiming benefits, or for any reason treat it as abrogated and as existing at the same time." Black, Rescission and Cancellation, (1916) sec. 561. The rule has been applied to rescission of leases. McLeod v. McEachern, 187 Ala. 230, 65 So. 790; McKeever v. Aronow, 194 N.Y.S. 475; Ciletti v. Acierno, 114 N.Y.S. 4; Title & Trust Co. v. Durkheimer Inv. Co., 155 Or. 427, 63 P.2d 909, 64 P.2d 834.

It is insisted, however, by the appellee (and the amicus curiae) that a different rule applies to rescission of a lease under the Rent Act, for the reason that Section 5 (b) of the Act prohibits actions to recover possession by a landlord against a tenant except on specific grounds "notwithstanding that the tenant has no lease or that his lease has expired." It is argued that this section permits a tenant to retain possession even though his lease has been rescinded. The answer to this is that section 5 (b) has reference to actions by landlords for possession. It restricts the landlord's right to evict a tenant (Westchester Apartments, Inc. v. Keroes, D.C.Mun.App., 32 A.2d 869), but has no application to actions by tenants for rescission.

Furthermore, section 5 (b) protects only a "tenant" in possession. Here, if the lease is rescinded, appellee has voluntarily sought destruction of the only agreement which established him as a tenant. He has no prior possession, legal or otherwise, to fall back on. Cf. Myers v. H. L. Rust Co., 77 U.S.App.D.C. 218, 134 F.2d 417; Powell v. F. C. Lynde Co., 49 App. Div. 286, 64 N.Y.S. 153. He has no basis for claiming to be a "person entitled to the use or occupancy" of the premises within the Act's definition of a tenant. § 11(f).

The action to rescind may also be brought for violation of a service standard. In most instances the service standard is not fixed by the lease. For example, leases of apartments generally contain no provision as to heat, hot water, elevator service and like matters. Consequently a lease may be rescinded for a cause entirely without its provisions. To what purpose should a tenant be allowed to rescind a completely valid lease if he is to remain in possession? Certainly not for the purpose of relief to the tenant, since rescission would not restore the service refused or compensate him for it; and if for the purpose of penalizing the landlord by depriving him of the benefits of the lease including provisions and restrictions wholly unrelated to rent or service, such penalty would have no relation or proportion to the landlord's refusal to render service in violation of the Act.

Section 10 (a) gives the tenant alternative remedies in the case of overcharge of rent or violation of service standard. He may sue to rescind the lease or bring action for double the excess rent or value of services refused. Furthermore, if no rent ceiling or service standard has been established under section 2, the tenant may petition the Administrator to determine the ceiling or standard. If a ceiling or standard has been fixed, either by law or by determination of the Administrator, the tenant may petition for an adjustment under section 4. It is apparent, therefore, that the tenant has a choice of remedies. If the tenant concludes that the relief obtainable before the Administrator or by an action for damages is either inadequate or undesirable, he may adopt the remedy of rescission, wipe out his lease and end all relations with the landlord. But we do not think that a tenant may have his lease re-

---

[1] See Hecht Co. v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 591, 88 L.Ed. —, where the court said: "We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made."

scinded and continue in possession when his original possession was obtained under the very lease he seeks to rescind. Rescission annulled the whole instrument and left the tenant no standing to claim possession of the property. If the tenant desired only a reduction in the rent charged he should have pursued the other remedies permitted under the Act and not have sought rescission. He cannot rescind and retain possession at the same time. The judgment below sought to permit this to be done, and it was therefore erroneous.

Reversed.

RICHARDSON, Chief Judge (concurring).

I concur in the foregoing opinion. I also think that apart from the reason assigned for reversal the trial court was in error in decreeing a rescission of the lease.

Section 10(a) of the Emergency Rent Act, quoted supra, authorizes rescission only where the landlord receives rent or refuses to render services in violation (1) "of any provision of this Act", or (2) "of any regulation or order thereunder prescribing a rent ceiling or service standard." The grounds of rescission here were limited to the receipt of rent. No regulation was involved. The order determining, which may be regarded as "prescribing," a rent ceiling was made after the rent complained of had been collected. The only question remaining is whether the receipt of rent was in violation of any provision of the act.

In Moore v. Coates, Mun.App.D.C., 40 A.2d 68, decided this day, we held that, as to property not rented on January 1, 1941, or during the year preceding, the rent charged for comparable housing was inoperative as a rent ceiling until reduced to a definite figure by the determination of the Administrator. Here the injustice of holding otherwise is more patent. The rescission of a three year lease, a penalty having no relation to the collection of rent, is invoked as the result of a collection of rent which was less than 6% above the rate later fixed by the Administrator.

Such a difference does not indicate that the rent charged was unreasonable or out of proportion to rents of comparable housing accommodations, but suggests rather that it was within the area which remained uncertain until defined by the Administrator. I cannot believe that Congress intended to make compliance with the law depend upon the outcome of a guessing contest.

While not bearing upon the questions of law involved in the appeal, I think it should be noted that reversal of the judgment entered by the trial court does not leave the parties to further litigation to adjust their obligations. Prior to the hearing in this court appellee had surrendered possession of the premises, rents had been adjusted and settled as of that date, and the case was moot except as to that provision of the judgment allowing attorneys' fees.

CAYTON, Associate Judge (dissenting).

I do not agree that by seeking the kind of rescission authorized by the Rent Act a tenant must be regarded as having maneuvered himself out of court and out of possession. Congress, I am sure, never intended any such strange result.

Nor do I agree that the ordinary textbook definition of rescission is applicable in this extraordinary situation, governed as it is by emergency legislation enacted for the benefit of tenants, and entitled, as it is, to a very liberal construction to that end.

And I certainly do not agree that under that law a tenant's rights depend upon, and stand or fall with his lease. The opposite is true. His right to possession stems from his *being in possession,* and his landlord has no right to disturb that possession save for special reasons provided in the Act. And such right to continuing possession is paramount to a lease, an agreement, a solemn stipulation, and even an antecedent court-judgment. See Myers v. Rust Co., 77 U.S.App.D.C. 218, 134 F.2d 417. The Rent Act says the possession of the tenant shall not be disturbed, lease or no lease. As I read the majority opinion, it sanctions an opposite result.