WILLIAM B. MAY and Another, etc., Appellants, v. GERTRUDE DERMONT, Respondent.

(Supreme Court, Appellate Term, First Department, December, 1920, Term — filed January, 1921.)

Statutes — construction of — meaning of words "occupied for dwelling purposes" — summary proceedings — landlord and tenant — Laws of 1920, chap. 942.

Although the legislative intent in the use of the words "occupied for dwelling purposes" in the statute (Laws of 1920, chap. 942) by which a landlord's remedy by summary proceedings is suspended, etc., means an occupation *by the tenant* for such purposes, and the statute should not be so construed as to include premises which are occupied by the tenant for the pur-

pose of providing dwelling or shelter to others for the tenant's profit, the legislature did not intend, however, to exclude from the operation of the statute premises occupied as a dwelling, not only by the tenant, but also by self-supporting members of the family or paying guests not related and perhaps strangers to the tenant, so long as such renting of the premises is merely incidental to the tenant's occupation.

APPEAL by the landlords from an order of the Municipal Court of the city of New York, borough of Manhattan, third district, dismissing the petition in a summary proceeding.

Everett, Clarke & Benedict (A. Leo Everett, of counsel), for appellants.

Campbell & Boland (Charles J. Campbell, of counsel), for respondent.

LEHMAN, J. The landlord has brought a summary proceeding to recover possession of a house leased to the defendant after the expiration of the defendant's term. At the trial the petition was dismissed on the ground that the landlord's remedy by summary proceeding was suspended by chapter 942 of the Laws of 1920. That statute provides that in view of the existing public emergency no summary proceeding " shall be maintainable to recover the possession of real property * * * occupied for dwelling purposes " except in certain contingencies; and the only question in this case is whether the house leased by the tenant is " occupied for dwelling purposes " within the meaning of the statute.

No evidence was presented at the trial, but the tenant conceded, and the landlord has accepted the concession, that the premises which the landlord seeks to recover are " a house in the City of New York occupied for dwelling purposes and for the purposes of this record, there are sixteen rooms in the house

and that she (the tenant) does not occupy more than one or two rooms at any time." It was further conceded that the tenant is a widow and that "she has no other business except the letting of rooms in this house and that the letting of rooms in this house is her sole or principal means of livelihood."

It is quite evident that the words "dwelling purposes" are not capable of a fixed definition which will be always applicable regardless of the context in which they are used, and an examination of the cases in which these words have been construed shows that the courts have placed one construction on them when used in a statute defining burglary, and another construction when used in a statute intended to restrict the granting of liquor licenses in residential districts; and they have placed one construction on them when used in a restrictive covenant in a deed and another construction on them when used in a warranty or condition in an insurance policy. This case itself furnishes a most striking example of the impossibility of finding a definition of the words that will satisfy all cases, for though the landlord asks us to reverse a finding that the house is "occupied for dwelling purposes" within the meaning of the statute, he has accepted a concession in which it is expressly stated that "the house is occupied for dwelling purposes."

It is plain that if we give the words a broad signification or even the ordinary signification in which they were used by the parties at the trial, then we must hold that the trial judge correctly held that the landlord's petition must be dismissed under the express provisions of the statute; and we can give these words a narrower signification only if a narrower construction will carry out the legislative intent. The statute under consideration is a remedial and not a penal statute, but it was enacted to meet an extraor-

dinary emergency by remedies of an extraordinary nature, and in construing the statute we are justified in assuming that the legislature never intended that its provisions should apply to cases where they could not constitute a remedy for the conditions which the legislature sought to relieve. The legislature has sought to protect the homes of inhabitants of great cities and to prevent landlords from compelling tenants to pay unreasonable rents for their homes. The legislature has not sought to protect the tenants of business premises from demands for unreasonable rent, and the landlord argues that in the present case the tenant is under the conceded facts using the premises for the business of a rooming house, and the legislature never intended that her business should receive extraordinary protection.

It is plain that the legislature did not intend its extraordinary remedies to apply to premises hired by the tenant for purposes of profit, even though that profit be made by the tenant in operating a hotel, a rooming house or a boarding house. The extraordinary laws do not prevent the lessee of such premises from securing from his guests all the compensation which he can induce or compel them to pay for housing, and it may well be argued that when the legislature used the words "occupied for dwelling purposes" it intended an occupation *by the tenant* for such purposes, and that the statute should not be construed as including premises which are occupied by the tenant for the purpose of providing dwelling or shelter to others for the tenant's profit.

For the purposes of this appeal, I have assumed that this is the correct construction of the statute, but even if so construed, it seems to me that its provisions are broad enough to protect the tenant in this case. Obviously the legislature did not intend to

exclude from the operation of the statute premises occupied as a dwelling not only by the tenant, but also by self-supporting members of the family who pay rent or board to the head of the household, and it can hardly be contended that the legislature intended to exclude from its operation similar cases where the paying guests are not related and perhaps strangers to the tenant so long as the renting of the rooms to strangers is merely incidental to the occupation of the premises by the tenant as his dwelling. . The landlord's counsel urges, however, that even if this construction be correct, in the present case it cannot reasonably be said that where fourteen or fifteen rooms in a house of sixteen rooms are leased for profit, the premises are still occupied by the tenant as her dwelling, and that in effect the house is occupied for business rather than dwelling purposes. While I recognize that the question is not free from doubt, I cannot agree with the landlord's contention. The tenant lives in the house and it constitutes her dwelling. So far as the record shows, she manages the household affairs, and the other persons who occupy most of the rooms in the house are in a sense members of the household and even of the family. There is no essential difference in the relations of the head of a household which includes one lodger who pays for his lodging and one which includes a number of lodgers. Even the term " family " is sometimes given a meaning sufficiently broad to include boarders or lodgers (see Words and Phrases Judicially Defined), and it seems to me that the legislative intent to protect tenants of premises " occupied for dwelling purposes " cannot be given its proper force and effect, unless we include within the protection of the statute all tenants who occupy the premises for the purposes of dwelling therein with their households, including

lodgers who form parts of the household even though the household is supported in whole by the payments made by the lodgers.

Order should therefore be affirmed, with twenty-five dollars costs.

GUY and WAGNER, JJ., concur.

Order affirmed, with twenty-five dollars costs.