MADELEINE S. STERN, Appellant, *v.* CARRIE MAUTNER, Respondent.

First Department, July 6, 1925.

**Landlord and tenant — action to remove widow of tenant from premises held by tenant at time of death as statutory tenant by force of Emergency Rent Laws — widow has right to continue possession on payment of proper rent — judgment on pleadings in favor of plaintiff denied.**

In an action to eject the defendant from an apartment in the city of New York, in which the complaint alleges that the defendant is the widow of the tenant who, at the time of his death, was holding the apartment as a statutory tenant by virtue of the Emergency Rent Laws, and in which the defendant alleges that she is ready and willing to pay the rent of the apartment, and that the lease was entered into with the express or implied understanding that the apartment was for the use of the tenant and other members of his household, including the defendant, and that the defendant continues in possession as the executor and also individually, with the consent of the executors, the plaintiff is not entitled to judgment on the pleadings, for under the Emergency Rent Laws the widow of a tenant who, at the time of his death, was holding as a statutory tenant, is entitled to continue to hold the premises upon the payment of the proper rental.

APPEAL by the plaintiff, Madeleine S. Stern, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 3d day of December, 1924, denying plaintiff's motion for judgment on the pleadings, under rule 112 of the Rules of Civil Practice and section 476 of the Civil Practice Act.

The opinions of the Special Term are reported in *Stern* v. *Mautner* (N. Y. L. J. Dec. 4, 20, 1924.)

*M. S. & I. S. Isaacs* [*Lewis M. Isaacs* of counsel], for the appellant.

*Rosenblum & Sommer* [*Bertram Sommer* of counsel], for the respondent.

DOWLING, J.:

The action was brought by the owner of an apartment house in New York city to eject an occupant of one of the apartments, upon the ground that the defendant, who has not the status of

a tenant, obtained and remains in possession adversely to the plaintiff and against her consent.

The complaint alleges plaintiff's ownership in fee of the premises in suit; the original leasing of the apartment occupied by the defendant to one Julius Mautner; a renewal of that lease for a term of three years from October 1, 1919; the occupancy by Julius Mautner, together with the defendant, who was his wife, and certain other members of his household; the continuance in occupancy by the said Julius Mautner after the expiration of his lease, without plaintiff's consent, but under the protection of the Emergency Rent Laws; the continuance of the defendant in possession with him; the death of the said Julius Mautner on August 23, 1924; and the entry of the defendant upon said premises, contrary to law and without the permission of plaintiff or any one authorized to give such permission. It also avers that defendant intruded into and squatted upon the said premises, and that she still squats upon and holds possession thereof without such permission, and has refused and still refuses to remove therefrom, and wrongfully withholds the same from plaintiff, who is and has been ever since August 23, 1924, entitled to the immediate possession thereof.

As a first complete defense, defendant alleges that she entered into possession of the said premises, together with the said Julius Mautner, deceased, as his wife; sets forth the original terms under which the said Julius Mautner and she entered into the premises, which were based on the express condition that the said apartment should be occupied as a strictly private dwelling apartment; the renewal of lease up to the 30th day of September, 1922, on the same terms and conditions. It is averred further that the said Julius Mautner and the defendant, with other members of the household of the said Julius Mautner, continued in occupation of the said premises after the expiration of the renewal of lease as a statutory tenant; that all conditions and covenants of the lease and the renewal thereof had been performed by the said Julius Mautner and defendant; that the said agreements so entered into with the said Julius Mautner relating to the occupation and possession of said apartment were entered into with the express and implied understanding that the said apartment was for the use, occupation, benefit and enjoyment of the said Julius Mautner and the other members of the household, including the defendant; and that by reason thereof the defendant has ever since the death of the said Julius Mautner on the 21st day of August, 1924, been in lawful occupation and possession of said premises and has been at all times ready and willing to pay the rent of said apartment,

but that the plaintiff, and/or her agents, refuses to accept the same.

For a second complete defense, the answer also sets forth that the said Julius Mautner died a resident of New York county; that his will was probated; that his executors have been duly nominated and appointed, one of whom was the defendant herself, and that they are acting as such; that the said Julius Mautner, at the time of his death, had certain household effects, wearing apparel and other personal property in said premises and that said executors, by virtue thereof and by operation of law, have been and now are in possession and occupation of said premises; but they have tendered the monthly rental at the rate last paid by Julius Mautner, deceased, to the landlord and her duly authorized agents, but she refuses to accept the same.

The answer also sets forth for a third complete defense that the defendant continues in possession and occupation of said premises by and with the consent and permission of the said executors of Julius Mautner, deceased.

The contention of the appellant is, that upon the death of a "statutory tenant" his widow and the members of his family forthwith become squatters and intruders and are without the protection of the "Emergency Rent Laws." No question of rent is involved, for both the widow and the executors are willing to pay the same amount of rent as was paid by Mautner up to the time of his decease.

I do not believe that the Emergency Rent Laws can be so restricted in their application. They were passed to meet conditions affecting the health, comfort, morals and prosperity of the city of New York and its citizens together with certain other cities and their inhabitants. They were sustained because of the conceded and menacing emergency which brought about their passage. They have been given a most liberal interpretation and beneficent application by the courts. That such laws should protect the head of a family in his desire to provide an adequate home for himself and his family, and still prove impotent to protect his widow and family when he is dead and they need shelter and protection most, would be a reflection both on Legislature and courts. I am of the opinion that these measures were passed, and should be interpreted, so as to assure housing accommodations, not only for the head of the family, but for all his immediate household, and that the aid of the State was meant to be given to keep them in their home as much as it was to aid him in maintaining them therein in his lifetime. This means no more than protecting the family as well as the individual during the shortage of housing facilities,

and I think it is well within the intent and the purpose of the Legislature and the language and meaning of the Emergency Rent Laws.

In *May* v. *Dermont* (114 Misc. 106) Mr. Justice LEHMAN said (at p. 108), referring to the Emergency Rent Laws: " The statute under consideration is a remedial and not a penal statute, but it was enacted to meet an extraordinary emergency by remedies of an extraordinary nature, and in construing the statute we are justified in assuming that the Legislature never intended that its provisions should apply to cases where they could not constitute a remedy for the conditions which the Legislature sought to relieve. The Legislature has sought to protect the homes of inhabitants of great cities." And (at p. 109): " Obviously the Legislature did not intend to exclude from the operation of the statute premises occupied as a dwelling not only by the tenant, but also by self-supporting members of the family who pay rent or board to the head of the household, and it can hardly be contended that the Legislature intended to exclude from its operation similar cases where the paying guests are not related and perhaps strangers to the tenant so long as the renting of the rooms to strangers is merely incidental to the occupation of the premises by the tenant as his dwelling." And again (at p. 110): " Even the term ' family ' is sometimes given a meaning sufficiently broad to include boarders or lodgers (see Words and Phrases Judicially Defined), and it seems to me that the legislative intent to protect tenants of premises ' occupied for dwelling purposes ' cannot be given its proper force and effect, unless we include within the protection of the statute all tenants who occupy the premises for the purposes of dwelling therein with their households, including lodgers who form parts of the household even though the household is supported in whole by the payments made by the lodgers."

If the protection of the Emergency Rent Laws is to be extended to lodgers and members of the household paying board or rent, with how much more force can it now be urged that such statutes should be held to extend to the widow and children of a deceased statutory tenant, in order to insure their continued occupancy of their home now that its head has gone. This applies to the first defense.

The broad and liberal spirit in which the Emergency Rent Laws are being applied is further demonstrated by the recent decision of the Court of Appeals in *Nod-Away Company, Inc.,* v. *Carroll* (240 N. Y. 252), in which it was held that the defense that the rent exacted for a dwelling is unreasonable and oppressive was intended by the Legislature to apply not only to leases made before the

enactment of the statute by which the defense was first established (Laws of 1920, chap. 944), but also to leases made thereafter. In passing it may be stated that while the Court of Appeals so held, it seems that such defense was actually first established by chapter 136 of the Laws of 1920, which was one of the April, 1920, Emergency Rent Laws or Housing Laws, and was the antecedent of chapter 944 of the Laws of 1920, which was one of the September, 1920, Emergency Rent Laws or Housing Laws, as amended.

The second defense is that the executors of said deceased Julius Mautner are in legal possession and occupation of said apartment by operation of law and by virtue of the fact that certain personal property belonging to said deceased remains on the premises, and that this defendant holds under such executors and as an executor herself.

In *Stern* v. *Equitable Trust Co.* (238 N. Y. 267) the Court of Appeals expressly refused to pass upon the point of whether an executor as such continued to occupy the premises of a deceased tenant by virtue of leaving the household effects of the deceased therein, because this question was not presented to the court with sufficient explicitness to warrant a ruling thereon, so that the question is still an open one, and it certainly has not been settled as yet in favor of plaintiff's contention adverse to this defense, and the validity of such a defense must depend to some extent upon the facts proven upon the trial.

There is an interesting English case of *Collis* v. *Flower* (L. R. [1921] 1 K. B. 409) decided under the Increase of Rent and Mortgage Interest (War Restrictions) Act, 1915 (5 & 6 Geo. 5, chap. 97), which prior to the decision of such appeal had been repealed and revised by the Increase of Rent and Mortgage Interest (Restrictions) Act, 1920 (10 & 11 Geo. 5, chap. 17), the purpose of which is similar to our Emergency Rent Laws. There one Mrs. Campbell, who occupied a house under the Rent Restriction Act (prohibiting the dispossession of tenants), died in April, 1919, leaving a last will and testament appointing one Flower, executor, and a Miss Offen, residuary legatee. The defendant, Miss Offen, had resided with the deceased and continued in occupation of the house after Mrs. Campbell's death. Notice to quit was served upon the defendant executor Flower, and as possession was not given up plaintiff brought suit. Defendants claimed protection under the English acts similar to our Emergency Rent Laws. The lower court decided in favor of the plaintiff but the court on appeal reversing the lower court held that the defendant executor was the tenant, or possibly Miss Offen was the tenant, not as residuary legatee of the estate, but as a mere ·

tenant at will under the executor, as the executor and Miss Offen had all of the deceased's interests.

ROWLATT, J., in his opinion, stated: It is not necessary for the executor to physically occupy in order to invoke the protection of the English acts, because "they cannot mean that if a lessee dies everyone then in the house, the widow and children, for example, can be turned out merely because the interest in the lease has passed to the executor who is not in physical occupation of the house."

McCARDIE, J., stated also in such case: " The draftsman of these Acts, which deal with the rights of tenants for short or prolonged periods, obviously must have contemplated that there must be many transmissions of title by death, and I gather that the County Court Judge has taken the view that transmission of title by death deprives the owner of the transmitted title of any protection whatever under the Acts unless he is in actual occupation. I cannot think that can be right, and in my opinion s. 2, sub-s. 1 (d), of the Act of 1915 [s. 12, sub-s. 1 (f), of 1920 Act]* was intended to cover such a case as this. That provides that ' the expressions " landlord," " tenant," * * * include any person from time to time deriving title under the original landlord, tenant, * * *.' That the executor gets his title from the original tenant is clear, and I take it that the rule is that, upon the death of a person, his tenancies, whether long or short, vest fully and at once in his executor from the moment of the death."

The third complete defense seeking to justify the continuance of possession by the defendant is based on the theory that the executors have given her the right and permission to occupy and possess herself of the said apartment, and that her occupation is not hostile, but rather in accord with their own. The answer as to the validity of this defense must depend upon the decision as to the soundness of the second defense.

Upon the whole case I am of the opinion that the learned justice at Special Term was right in denying plaintiff's motion for judgment on the pleadings, and that the order should be affirmed, with ten dollars costs and disbursements.

CLARKE, P. J., FINCH, McAVOY and MARTIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.

---

* See 5 & 6 Geo. 5, chap. 97, § 2, subd. 1, ¶ (d); 10 & 11 Geo. 5, chap. 17, § 12, subd. 1, ¶ (f) — [REP.