**DORRANCE et al. v. MARTIN et al.**

**HILL v. SAME.**

Nos. 5091, 5092.

District Court, D. New Jersey.

June 3, 1935.

John Milton, of Jersey City, N. J., and William A. Schnader, of Philadelphia, Pa., for plaintiffs.

David T. Wilentz, Atty. Gen., and Hobart & Minard, of Newark, N. J., for defendants.

Before WOOLLEY and DAVIS, Circuit Judges, and AVIS, District Judge.

WOOLLEY, Circuit Judge.

On September 21, 1930, John T. Dorrance died. His place of business had been Camden, New Jersey. During the later years of his life he maintained at the same time three domestic establishments: one at Cinnaminson in the State of New Jersey, another at Radnor in the Commonwealth of Pennsylvania, and still another at Bar Harbor in the State of Maine. He spent a portion of the summer of the year 1930 at his Bar Harbor residence and, on returning, died at his New Jersey residence where he had been staying while his Pennsylvania residence was being made ready for occupancy.

Dorrance, by his will, declared himself a resident of the Township of Cinnaminson, in the County of Burlington and State of New Jersey and, by ex-

press provision, required his executors, under severe penalties for disobedience, to offer his will for probate in that state. Accordingly, on October 1, 1930, they offered his will for probate before the Surrogate of Burlington County, New Jersey, and in due course that official granted them letters testamentary. Thereupon the executors, acting under the jurisdiction of the Orphans' Court of Burlington County, New Jersey, set about to administer the vast estate of the testator which consisted almost entirely of intangible personal property.

The State of New Jersey evidently took it for granted that, as Dorrance had, on his own declaration, been a resident of that state and as his estate was being administered under letters testamentary granted in a county thereof, the situs of his intangible personal property was New Jersey and, accordingly, the property was subject to inheritance tax under the laws of that state (4 Comp. St. N. J. 1910, p. 5301, § 537 et seq., Comp. St. Supps. N. J. 1924, 1930, § 208—537 et seq.). On the other hand, the Commonwealth of Pennsylvania, acting more promptly, claimed that Pennsylvania was the domicile of Dorrance and therefore was the situs of his intangible personal property, and for that reason his property was subject to inheritance tax under the laws of that commonwealth (72 PS Pa. § 2301 et seq.). The State of Maine, evidently recognizing that the establishment of Dorrance at Bar Harbor was only a summer residence, has made no claim for taxes.

Thus there arose a controversy, nominally between persons but actually between states, which by reason of the stake has grown to major proportions. An understanding of its present phase can be had only by giving in brief outline the administrative and judicial proceedings which have been pursued concurrently and along somewhat parallel lines in the two states.

Early in the New Jersey administration of the Dorrance estate the Commonwealth of Pennsylvania formally claimed that the decedent was at the time of his death domiciled in Radnor Township, Pennsylvania. Acting under claim of authority of Pennsylvania inheritance tax laws the Register of Wills of Delaware County, Pennsylvania, appointed an appraiser who, on April 20, 1931, filed an appraisement of the Dorrance estate at $199,999,000 upon which was computed and assessed inheritance tax due Pennsylvania in the sum of $31,465,200.

On May 14, 1931, the executors, resisting taxation in Pennsylvania, appealed from this assessment to the Orphans' Court of Delaware County, Pennsylvania. That court sustained the executors' appeal and set aside the assessment. Thereupon the Commonwealth of Pennsylvania appealed to the Supreme Court of Pennsylvania. On September 26, 1932, that court reversed (In re Dorrance's Estate, 309 Pa. 151, 163 A. 303) the decree of the Orphans' Court and reinstated, in a modified amount, the tax assessment which the Register of Wills of Delaware County had made. On petition, the Supreme Court of the United States, denying the State of New Jersey a right to intervene, refused the executors a writ of certiorari (Dorrance v. Pennsylvania, 287 U.S. 660, 53 S.Ct. 222, 77 L.Ed. 570) because (it was thought) it could not find that a federal question had been presented to and passed upon by the Supreme Court of Pennsylvania. Thereupon the Supreme Court of Pennsylvania on March 27, 1933, entered judgment for the Commonwealth of Pennsylvania and against the executors of the will of John T. Dorrance for transfer inheritance tax in the amount of $14,394,698.88, subject to an additional tax if and when the final determination of the amount of the federal estate tax should disclose that 80 per cent. thereof exceeded the above amount. The judgment included a tax upon the transfer of all of Dorrance's intangible personal property. On mandate a like judgment was entered in the Orphans' Court of Delaware County and on March 31, 1933, the executors paid the tax with $104,278.03 interest and gave bond for $4,000,000 to meet the eventuality of an additional assessment because of the federal estate tax.

During all these proceedings in Pennsylvania, taxing officials and courts in New Jersey had been active in an endeavor to assess, sustain and collect from the Dorrance estate the inheritance tax in that state. Of this Pennsylvania officials and the executors of the will were fully informed.

The New Jersey proceedings, stated as shortly as possible, were these: On various dates the executors of the will of Dorrance, aiding the taxing author-

ities in New Jersey, made returns to the Comptroller of the Treasury of New Jersey showing their testator was domiciled in New Jersey and supplying data for transfer inheritance tax purposes under the laws of that state, particularly that the decedent left no real property; that his entire estate, the market value of which was estimated at $115,121,518.92, consisted of personal property and almost entirely of intangible personal property; that all securities of the estate except a small amount not then important were located in New Jersey; and that after deductions for debts and expenses the net amount for distribution was $112,055,400.-86. On this and other information the State Tax Commissioner of the State of New Jersey, on October 17, 1931, made an assessment of transfer inheritance tax against the decedent's estate in the sum of $12,247,333.52 with a notice that if the tax was not paid before a named date interest would be added at the rate of ten per cent. per annum, and made an additional assessment in the sum of $4,521,143.90 on account of certain contingent remainders.

In December, 1931, the State Tax Commissioner of New Jersey opened this assessment pending the decision of the Pennsylvania courts of Pennsylvania's claim for inheritance tax and for the purpose of permitting additional information to be submitted regarding the domicile of Dorrance. However, on October 10, 1932, after the judgment of the Supreme Court of Pennsylvania had been rendered and offered in evidence, the State Tax Commissioner of New Jersey again made an assessment of transfer inheritance tax against the estate in the same amounts as before and with like penalty for nonpayment, which, as before, included tax on intangible personal property.

On December 9, 1932, the executors, being charged with a tax due Pennsylvania and now resisting taxation by New Jersey, challenged this (the final) assessment by appeal to the Ordinary of the State of New Jersey. On May 11, 1934, the Ordinary entered judgment in the Prerogative Court sustaining the State Tax Commissioner's final assessment (In re Dorrance's Estate, 116 N.J.Eq. 204, 172 A. 503), which was a decision opposed to and without giving credit to the decision of the Supreme Court of Pennsylvania on the issue of domicile.

Thereupon the executors obtained a writ of certiorari from the Supreme Court of New Jersey (Dorrance v. Martin, 176 A. 902, 13 N.J.Misc. 168) which after hearing sustained the judgment of the Prerogative Court. Although having notified the State Tax Commissioner of their intention to appeal to the Court of Errors and Appeals of New Jersey, the executors, with ample time yet to do so, have turned abruptly from the state courts of New Jersey to the federal courts in proceedings to which, in this rather long recital, we have at last arrived.

After the decision by the Supreme Court of New Jersey sustaining the inheritance tax imposed by the taxing authorities of that state upon the intangible personal property of John T. Dorrance, his executors in one suit and Elinor Dorrance Hill, his daughter and a beneficiary under his will, in another suit in the District Court of the United States for the District of New Jersey pray by their bills that injunction issue, temporary until hearing and perpetual thereafter, enjoining the defendants, officials of the State of New Jersey vested with power to assess and collect taxes, from collecting or attempting to collect inheritance tax on the transfer of intangible personal property of the estate of John T. Dorrance, deceased. The plaintiffs seek this relief in the federal district court upon the assertion that the administrative proceedings of the State of New Jersey in respect to the assessment of the tax against the estate of John T. Dorrance had been completed with the decision of the Supreme Court of that state and that judicial proceedings thereon have not since been commenced, and on the contention that in such case the federal district court, specially constituted with three judges sitting, has jurisdiction under section 266 of the Judicial Code, 28 USCA § 380, of the constitutional questions raised.

The constitutional question which the plaintiffs particularly urge is to the effect that lawful inheritance taxation of intangible personal property of a decedent depends on its situs and its situs depends on the domicile of the owner at the time of his death; that the domicile of John T. Dorrance, the decedent in these cases, has been judicially determined by the Supreme Court of Pennsylvania to be the Commonwealth of

Pennsylvania, and accordingly the situs of his intangible property is there also; that only Pennsylvania, the state of domicile, can impose the tax; that if the New Jersey Inheritance Tax Act of April 20, 1909, c. 228, p. 325, as amended (4 Comp. St. N. J. 1910, p. 5301, § 537 et seq., Comp. St. Supps. N. J. 1924, 1930, § 208—537 et seq.), in force at the time of the assessment of the tax in New Jersey, has been properly construed by the defendants (and by other administrative agencies of New Jersey) as applying to property the situs of which is outside of the State because the owner was not domiciled in New Jersey at the time of his death, it is unconstitutional under the Fourteenth Amendment to the Constitution of the United States; and if, on the other hand, the act has not been properly construed by the defendants and administrative agencies of the State, the assessment violates the due process and equal protection clauses of the Fourteenth Amendment.

At a hearing on bills, answers and affidavits for preliminary injunctions, this court, three judges sitting, was met on the threshold with the question whether it has jurisdiction under section 266 of the Judicial Code to grant preliminary relief in the legal circumstances. Putting aside for the moment the disputed factual question of domicile of the decedent, there is on the question of jurisdiction no dispute of fact, that is, no dispute as to what has happened. The question of jurisdiction centers in the legal character of the things that have been done and in their legal consequences as they affect the plaintiffs' right to ask for and the power of this court to grant the relief for which they pray.

■ The theory underlying federal jurisdiction in such case is that the administrative proceedings of the state in laying the tax must have been completed before the aggrieved taxpayer can call upon a federal court for relief. At that particular point, that is, before anything else shall have been done to correct or annul the assessment, the taxpayer may seek relief in a federal district court under the cited provision of the Judicial Code if an appropriate constitutional question is involved and other jurisdictional requisites are present. But the theory underlying federal jurisdiction in such case goes a step further and is to the effect that if the aggrieved taxpayer should pass the point at which administrative proceedings end and should take an appeal or otherwise seek relief in a state court whose jurisdiction of the matter is judicial, then he is bound to the tribunal of his choice and bound by its decision which, if error, is subject to correction only by the orderly method of appeal. In such case a shift in the midst of judicial proceedings from a state court to a federal court by institution of suit in the latter for equitable relief, would, perhaps, be met by a plea of res judicata, and if the federal suit should operate as a stay of proceedings in the state court it is forbidden by federal law (Jud. Code § 265, 28 USCA § 379).

Executors of John T. Dorrance v. J. H. Thayer Martin, State Tax Commissioner et al.

■ Applying these observations to the doings in the New Jersey side of this controversy, it is possible that the administrative proceedings in respect to the tax may have ended with the assessment by the State Tax Commissioner and promptly thereafter the executors (other jurisdictional requisites being present) might have applied to a federal court for relief from threatened unconstitutional acts conformably with somewhat like proceedings in the case of City Bank Farmers' Trust Co., Executor, v. Schnader, Attorney General, 291 U.S. 24, 54 S.Ct. 259, 78 L. Ed. 628. However, instead of moving to a federal court at this critical point when perhaps their way was clear, the executors appealed from the assessment to the Ordinary of New Jersey who through the Prerogative Court of that state approved the assessment. If the jurisdiction of the Prerogative Court is administrative, the executors, by appealing to that court, lost no opportunity to go elsewhere, for in that event the administrative action in laying the tax was not concluded with the assessment by the State Tax Commissioner but carried through to the Prerogative Court. Whether the jurisdiction of that Court is administrative as the executors contend is debateable. We could, conceivably, be persuaded under New Jersey authorities that its jurisdiction is judicial. However, as the matter is not dispositive of the case, we

shall assume without deciding that its jurisdiction in respect to tax matters is administrative. If the administrative proceedings stopped with the decision of the Prerogative Court, then the executors could at that point have lawfully sought relief in a federal court from constitutional misconduct of state officials. Evidently believing the administrative proceedings did not stop there, the executors went on to the next New Jersey court—the Supreme Court—which they reached by certiorari. That court, in turn, affirmed the judgment of the Prerogative Court sustaining the assessment. Then it was, the executors said, the administrative proceedings came to an end, and at last they could go to the federal court. But that would be true only if the jurisdiction of the Supreme Court of New Jersey in respect to tax matters is administrative. If judicial, the administrative proceedings ended with the Prerogative Court and the executors were too late.

We are firmly of opinion that the jurisdiction of the Supreme Court of New Jersey in reviewing the action of statutory agencies created for the purpose of assessing and collecting taxes is judicial, Dufford v. Decue, 31 N.J.Law, 302; Traphagen v. Township of West Hoboken, 39 N.J.Law, 232; Flanagan v. Treasurer of City of Plainfield, 44 N.J.Law, 118; Mayor, etc., of Jersey City v. Lembeck, 31 N.J.Eq. 255; In re Roebling's Estate, 91 N.J.Eq. 72, 108 A. 359; Black's Law of Taxation (4th Ed.) §§ 279a, 129h, p. 181, made so by the Constitution of New Jersey (article 6, § 5), and that the Court is of sufficiently high rank to be recognized and on occasion followed by courts of the United States, Erie R. Co. v. Hilt, 247 U.S. 97, 101, 38 S.Ct. 435, 62 L.Ed. 1003; that the administrative proceedings in respect to the tax ended at the latest with the judgment of the Prerogative Court and that in consequence the executors on turning to the federal district court after the judicial decision by the Supreme Court of New Jersey not only encountered a plea of res judicata but were confronted by section 265 of the Judicial Code (28 USCA § 379) which, going directly to the jurisdiction of this Court to grant the relief asked for, provides that: "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except."

It is intimated that because the Supreme Court of New Jersey had come to a judgment, the proceedings in that court similarly had come to an end, leaving the executors free to seek relief where they chose, whether by appeal to the New Jersey Court of Appeals or by suit in the United States District Court. But we are constrained to hold that having passed by the ending of the administrative proceedings in respect to the tax and having thereafter entered a state judicial tribunal, the executors must abide the consequences, one of which is that proceedings in the state courts were not ended by the judgment of the Supreme Court. The prohibition of section 265 of the Judicial Code denying the right of any court of the United States to stay proceedings in any court of a state is not limited to proceedings in a court of a state "up to and including final judgment only, but [extends] to the entire proceedings from the commencement of the suit until the execution issued on the judgment or decree is satisfied." Leathe v. Thomas (C.C.A.) 97 F. 136, 138; Wayman v. Southard, 10 Wheat. 1, 22, 6 L. Ed. 253. What may happen in consequence of the decision by the Supreme Court of New Jersey remains to be seen. The executors may appeal to the New Jersey Court of Errors and Appeals or the State may proceed to collect the tax validated by the New Jersey Supreme Court decision. The latter, in this state of the case, is not subject to interference by a federal district court; the former constitutes a remedy at law with admittance finally to the Supreme Court of the United States if a valid constitutional question is involved.

Adverting finally to their main insistence, we are constrained to differ from the position of the executors that in all material respects the instant case parallels and is controlled by the City Bank Farmers' Trust Co. v. Schnader et al., 291 U.S. 24, 54 S.Ct. 259, 78 L.Ed. 628. While both cases concern the situs of and therefore the right to tax personal property of a decedent, the point of departure between the cases is that in the Schnader Case resort was made to a federal court at the very end of the administrative proceedings or at what the

court regarded as its equivalent and before judicial proceedings had been commenced in the Court of Common Pleas of Dauphin County, while in the instant case the taxpayers moved to the federal court not at the end of the administrative proceedings but intermediate the judicial proceedings.

Elinor Dorrance Hill v. J. H. Thayer Martin, State Tax Commissioner.

Elinor Dorrance Hill, daughter of John T. Dorrance, the decedent, and a beneficiary under his will, has brought an independent suit in the United States District Court on the theory that, though not a party to the tax proceedings in the two states and not a party with the executors in their suits in the State courts, she needs, is entitled to, and therefore seeks federal relief from a threatened taking of her property by taxing officials of New Jersey in violation of her constitutional rights. Though not a party, she certainly was privy to those proceedings and suits. They concerned in part property which some day will be hers and with respect to which the executors presently hold title and have possession with rights to administer, including payment of lawful taxes. Her grievance against what she conceives to be threatened misconduct by New Jersey officials and her right to relief therefrom are no higher and no greater than, and indeed no different from the grievance and the right of the executors litigating for her benefit. We cannot see how the legal circumstances of the case cast upon her a right to maintain this suit for preliminary injunction when they deny such a right to the executors with respect to the same property coming from the same source and involving the same questions of fact and law. A grant of her prayer for a preliminary injunction would be as plain a violation of section 265 of the Judicial Code as a grant of the like prayer of the executors.

Holding that this court is without jurisdiction in the premises, the prayers of the bills for preliminary injunctions are denied and the cases set over for final hearing on motion of counsel.

Statements of fact and declarations of law in the aforegoing opinion shall be regarded as findings of fact and conclusions of law in the respective cases within Equity Rule 70½ (28 USCA following section 723).