## MYERS v. H. L. RUST CO.
### No. 8225.

United States Court of Appeals for the
District of Columbia.
Decided Feb. 8, 1943.

Mr. Jerome F. Barnard, of Washington, D. C., with whom Mr. R. S. Harrington, of Washington, D. C., was on the brief, for appellant.

Mr. Joseph T. Sherier, of Washington, D. C., with whom Mr. J. Allan Sherier, of Washington, D. C., was on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

On November 4, 1941, appellee sued to recover possession of an apartment in the District of Columbia upon the sole ground that the tenancy had been terminated by service upon appellant of a thirty-day notice to quit. Trial of the case was set for December 2, 1941, and on that date it was stipulated by counsel for the respective parties that judgment for possession should be entered as of December 2, 1941, with a stay of execution until the 31st day of January, 1942. The stipulation contained the following proviso: "* * * that all intervening rent for the premises involved be promptly paid in accordance with the provisions of the lease. In the event of default in the payment of any installment of rent reserved in the lease, and a proper showing being made of such default, a writ of restitution for possession of the property involved may issue forthwith." Pursuant to the terms of the stipulation, judgment for possession and a stay of execution were entered on December 2, 1941. Appellant paid the rent for December, 1941 and January, 1942. On January

28, 1942, appellant moved to stay issuance of a writ of restitution for the reason that: "The District of Columbia Emergency Rent Act, approved December 2, 1941, and effective January 2, 1942, has exclusive jurisdiction in the premises."[1] Thereafter, appellant continued to occupy the apartment and on several occasions between January 30, and March 30, 1942, tendered payment of rent, but appellee on each occasion refused to accept it. On March 27, 1942, the trial court overruled appellant's motion to stay restitution. On the same day appellee instructed the clerk of the court to issue a writ of restitution for possession of the premises; and on the same day the writ was issued and returned. On March 30, 1942, appellant moved for (1) reconsideration of the court's denial of a stay and moved further (2) for an indefinite extension of the stay of restitution theretofore entered, and (3) "to quash the writ of possession issued herein." The trial court, on April 4, 1942, overruled appellant's motion of March 30th. An appeal was sought from the orders of March 27th and April 4th. We granted the appeal to determine whether the case is controlled by the Emergency Rent Act.

There is no contention that appellant is in default of rent or that any other condition specified in the Rent Act has been satisfied by appellee in such manner as to justify repossession. Appellee's contentions may be summarized as follows: (1) the Rent Act did not become effective until the thirtieth day following December 2, 1941; (2) it was not the intention of Congress that the Act should be given a retroactive effect; (3) the Rent Act did not repeal Section 271[2] of Title 24 of the 1929 Code of the District; (4) having received the benefits of the stipulation staying execution of the judgment, appellant is estopped to repudiate its obligation.

The Act provided expressly that some of its provisions should go into effect thirty days after its enactment; but none of these provisions are relevant to the present controversy.[3] It seems probable, at least, that in other respects the Act was intended to be effective from the date of enactment.[4] But it is not necessary to decide this question or to consider appellee's second contention concerning the possible retroactive effect of the Act. Section 5(b) provides that: "No action or proceeding to recover possession of housing accommodations shall be maintainable by any landlord against any tenant, notwithstanding that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled, * * *." There can be no doubt that this language was intended to govern situations such as the one of the present case. Appellee's direction to the clerk, on March 27, 1942, to issue a writ of restitution for possession, and the chain of circumstances which followed, constituted the maintaining of a

---

[1] 55 Stat. 788.

[2] D.C.Code (1924) § 1074; Id. (1940) § 15—201: "Where the right to issue an execution is not suspended by agreement or by an injunction or by an appeal operating as a supersedeas, a writ of execution may be issued immediately on the rendition of the judgment or at any time within three years thereafter; and where the right to issue the same is suspended by any of the causes aforesaid said writ may be issued within three years after the removal of the suspension, and every such writ shall be returnable on or before the sixtieth day after its date."

[3] "Sec. 2(1) On and after the thirtieth day following the enactment of this Act, * * * maximum-rent ceilings and minimum-service standards for housing accommodations excluding hotels, in the District of Columbia shall be the following: * * *

"(2) On and after the thirtieth day following the enactment of this Act, the landlord or other person in charge of and conducting any hotel in the District of Columbia shall post in a conspicuous place in each room thereof used for living or dwelling purposes, a card or sign plainly stating the rental rate per day of such room, and a copy of such rates for each room shall be filed with the Administrator. * * *

"Sec. 5(a) It shall be unlawful, * * * for any person to demand or receive any rent in excess of the maximum-rent ceiling, or refuse to supply any service required by the minimum-service standard, or otherwise to do or omit to do any act in violation of any provision of this Act or of any regulation, order, or other requirement thereunder, or to offer or agree to do any of the foregoing. Nothing herein shall be construed to require the refund of any rent paid or payable for the use or occupancy of housing accommodations prior to the 30th day following the enactment of this Act."

[4] See Lapeyre v. United States, 84 U. S. 191, 198, 21 L.Ed. 606.

proceeding;[5] whether or not any earlier action upon the part of appellee can be properly so regarded. At that time appellant was a tenant in possession of "housing accommodations." Notwithstanding she had no lease, or that her lease had expired, her landlord, appellee, was barred from maintaining an "action or proceeding to recover possession." The Act speaks in terms of tenants who were in possession upon its effective date, even though they may have held at will or by sufferance. It is an emergency act designed to prevent increases in cost of living and other impediments to the national-defense program.[6] So long as such tenants continue to pay the rents to which landlords are entitled, they may not be dispossessed, unless, because of one of the four reasons specified in Section 5(b), a landlord may become exempted from the prohibitions of the Act.

If the Code section (271) upon which appellee relies is in conflict with the Emergency Rent Act, then, to the extent of the conflict, it must give way to the later legislation. Not only is this result required by the general rule,[7] but it is required in the present case, particularly, because the applicable Act, constituting as it does later, special legislation, is obviously intended to modify the general law previously existing.[8]

As the right to issue execution, in the present case, was suspended by the agreement contained in the stipulation of December 2, 1941, appellant was, thereafter, a tenant in possession; the lease was expressly revived, by the stipulation, for a two months' period; rent was paid and accepted. This was the situation which existed when the Emergency Rent Act went into effect, whether on December 2, 1941, or on January 2, 1942; and it was a situation which came clearly within the terms of that Act. The purpose of the Act was to freeze landlord-tenant relationships then existing. The fact, that Section 271 of the Code remains in effect, not only for general purposes, but for the enforcement of judgments, properly secured upon grounds set forth in the Act, does not require that the Section be so interpreted as to defeat this major purpose.[9]

Appellee's contention concerning estoppel must be rejected also. It was the intervention of the act of Congress which changed the relationship of the parties. Appellant's position is no different, so far as concerns the operation of the Rent Act, than would be that of a tenant who had leased property for a term. In each case there is a solemn promise which, except for the emergency legislation, would be enforceable by judgment and execution. But in each case, whatever the moral obligations may be, so long as this emergency legislation remains in effect, the legal obligation of the tenant, to quit, is suspended; as are the rights and powers of the landlord, so long as rent is paid and until some change in the situation occurs which brings into operation one of the provisions of Section 5(b) (1) (2) (3) (4). None of the cases cited by appellee suggest a different result.

The case will be remanded to the Municipal Court for further proceedings consistent with the opinion.

Reversed.

---

[5] Proceeding includes not only execution of judgment, but any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective. Hill v. Martin, 296 U.S. 393, 403, 56 S. Ct. 278, 80 L.Ed. 293; Dorrance v. Martin, D.C., 12 F.Supp. 746, 750; Ke-Sun Oil Co. v. Hamilton, 9 Cir., 61 F.2d 215, 218, 219, 85 A.L.R. 204. See Hyattsville Bldg. Ass'n v. Bouic, 44 App.D.C. 408, 413.

[6] Section 1(a) (b).

[7] United States v. Tynen, 78 U.S. 88, 92, 20 L.Ed. 153; Lewis v. United States, 50 Ct.Cl. 226, 241, affirmed 244 U.S. 134, 144, 37 S.Ct. 570, 61 L.Ed. 1039; Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 80 L.Ed. 351; Cook County Nat. Bank v. United States, 107 U.S. 445, 451, 2 S.Ct. 561, 27 L.Ed. 537;

Bookbinder v. United States, 3 Cir., 287 F. 790, 792. See Ritholz v. March, 70 App.D.C. 283, 284, 105 F.2d 937, 938.

[8] Callahan v. United States, 285 U.S. 515, 518, 52 S.Ct. 454, 76 L.Ed. 914; City of Walla Walla v. Walla Walla Water Co., 172 U.S. 1, 22, 19 S.Ct. 77, 43 L. Ed. 341; Henderson v. Washington, Marlboro & Annapolis Motor Lines, Inc., 77 U.S.App.D.C. ——, 132 F.2d 729, certiorari denied April 5, 1943, 63 S.Ct. 854, 87 L. Ed. ——.

[9] "In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress." United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 542, 60 S. Ct. 1059, 1063, 84 L.Ed. 1345.