**STONER v. HUMPHRIES.**

**No. 1168.**

Municipal Court of Appeals for the District of Columbia.

Argued Dec. 17, 1951.

Decided Jan. 17, 1952.

Herman Miller, Washington, D. C., for appellant.

William J. Rowan, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

In June 1951 Congress extended the life of the District of Columbia Emergency Rent Act, D.C.Code 1940, § 45–1601, et seq., and amended it in several respects. Public Law 63, 82nd Congress, approved June 30, 1951, 65 Stat. 98, 79 W.L.R. 673. One of the amendments, Section 2(4) provided that for housing accommodations rented on January 1, 1941 (the freeze date under the original Act), the maximum-rent ceiling should be increased to twenty per cent above the freeze date rental, upon the filing by the landlord with the Rent Administrator of a new rent schedule form. The question before us is whether tenants were obligated to pay such authorized increase when the landlord filed his schedule or whether tenants were also entitled to a thirty day notice.

The defendant in this case has been in possession of an apartment as a month-to-month tenant since 1940. Upon his refusal to pay rent due on August 1, 1951, he was sued for possession and defended on the ground that the increase authorized by Congress could not become effective unless the landlord first served on the tenant a thirty day notice to quit. In a full and carefully prepared memorandum the trial judge ruled that no such notice was required, that the new ceiling became effective when the schedule was filed with the Administrator, and that plaintiff was entitled to possession for non-payment of rent at the increased rate. The case is here on tenant's appeal.

In the pertinent part of the amended Act it is prescribed that "upon the filing by any landlord of any housing accommodations covered by this subsection, of a new rent schedule on a form prescribed by the Administrator and setting forth the pertinent circumstances as indicated by such form, the rent and service shall be adjusted and automatically effective upon the date of filing thereof. * * *" It was stipulated in the trial court that "the form prescribed

by the Administrator embodying the new rent schedule was filed * * * at the office of rent control on July 30, 1951," and notice thereof given on the same day to the tenant. But despite landlord's compliance with the statute tenant contends that he was not entitled to the benefit of the increased rent authorized by Congress unless he first served on the tenant a thirty day notice to quit terminating the tenancy. We think the contention is utterly wrong.

■ A primary purpose of Rent Control legislation was to freeze existing tenancies and assure the right of continuing possession to tenants of dwelling property. Myers v. H. L. Rust Co., 77 U.S.App.D.C. 218, 134 F.2d 417; Warthen v. Lamas, D.C.Mun. App., 43 A.2d 759; Quick v. Paregol, D.C. Mun.App., 68 A.2d 211.

Nothing in the original Act or in any of the several ensuing amendments even suggests a Congressional intent that before a rent increase was to become effective, a landlord would have to go through the formality of first terminating the tenancy and then creating a new tenancy at the increased rental. This would be artificiality at its worst. Furthermore there would be no legal basis for a notice to quit, for this landlord admittedly could not claim that he was within any of the exceptions provided elsewhere in the Act,[1] which would authorize him to demand possession; he filed his suit only to enforce his right to the statutory increase. As we have said, the purpose of rent control is to preserve the continuity of existing tenancies, not to destroy it. The notice for which appellant is contending under Code 1940, § 45–902 is the familiar method of terminating a month-to-month tenancy—a condition precedent to filing a suit to oust the tenant. Ouster is nowise involved in the phase of the legislation here under consideration. This was the exercise of the Congressional power to provide what was felt to be a just increase in income to property owners in the named group.

Appellant does not question that Congress had such power. His complaint is that the effect of the decision to "permit the appellee now to change that agreement by involuntarily requiring the appellant to pay the increased rent is the creation of a new tenancy without the consent of the appellant." That, of course, is entirely untrue. Nothing in the Act leads to so absurd a result, and there can be no doubt that the tenant has the right to continued occupancy so long as he pays the rental established by law. Quick v. Paregol, supra. Indeed appellant concedes that, "The new rent act, as the old one, did not in any way attempt to create any new procedure. It did not attempt to set up any new rights regarding notice."

Appellant also complains that under an earlier procedure before the Administrator, adjustments of rents were had after hearings before an examiner with the right to appeal to the Administrator and to this court. He says that the new enactment "does away with the necessity of a hearing, findings of fact and appeals." The short answer is that such was within the legislative power: that just as Congress had the right in the first instance to prescribe an administrative method of adjusting rent ceilings, so it also unquestionably has the power to grant a blanket increase by a different prescribed procedure.

Never before have we heard it contended that under the earlier administrative procedure a tenant had a right to demand a notice to quit before an upward adjustment of rent could become effective. As the trial judge observed in his memorandum, "Certainly if the 30 days notice was not required to effectuate the rent increases under the statutory authority granted the Administrator, such notice is not required where Congress gives the increased rentals to be effective immediately."

■ We conclude that when Congress said that the increased rent "shall be adjusted and automatically effective upon the date of filing" the rent schedule form, it meant what it said and that no limitation can be put on those words by the courts.

In so plain a situation it seems unnecessary to resort to dictionary definitions, or to rely on case precedents. But we do refer

---

1. Code 1940, Supp. VII, § 45–1605.

to a few decisions which support our opinion that "automatically effective" means effective without further procedural steps and without additional notice. Woolley v. Hendrickson, 73 N.J.L. 14, 62 A. 278; Poe v. Penn Mut. Life Ins. Co. of Philadelphia, D.C.E.D.Ark., 32 F.Supp. 167; Land O'Lakes Dairy Co. v. Hintzen, 225 Minn. 535, 31 N.W.2d 474; Continental Casualty Co. v. Trenner, D.C.E.D.Pa., 35 F.Supp. 643; Hawthorne v. Bankers' Life Co., D.C. W.D.Mo., 52 F.2d 309, affirmed 8 Cir., 63 F.2d 971.

Affirmed.